IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

GERALD SCHEEL,

                Plaintiff,

       v.

GUIDEONE MUTUAL INSURANCE
COMPANY, an Iowa Corporation

                Defendant.

Civ. No. 3:15-cv-01112-AC

OPINION &
ORDER

ACOSTA, Magistrate Judge:

In 2013, Plaintiff Gerald Scheel ("Scheel") was involved in an automobile accident in British Columbia, Canada which caused personal injury and required him to incur significant medical expenses. Scheel filed a claim with his automobile insurer, Defendant GuideOne Mutual Insurance Company ("GuideOne"). GuideOne covered portions of Scheel's claim, but denied compensation for medical expenses relating to back surgery Scheel underwent following the accident. Scheel filed this lawsuit against GuideOne for breach of the insurance policy.

OPINION & ORDER - 1

[RMD]

The parties have now filed cross-motions for summary judgment. The motions turn on two points of contention. First, the parties disagree whether the limit of liability for Scheel's claim is $25,000 or Can$150,000. Second, the parties disagree whether Scheel's back surgery was a "reasonable and necessary" result of the automobile accident which gave rise to his insurance claims. After carefully reviewing the record, the court concludes Scheel's Motion for Partial Summary Judgment is granted, and GuideOne's Motion for Summary Judgment is denied.

*Factual Background*

I. The Policy and the Power of Attorney and Undertaking

Scheel purchased an automobile insurance policy ("the Policy") from GuideOne in 2002. (Declaration of Gerald Scheel in Support of Motion for Partial Summary Judgment ("Scheel Decl.") ¶ 2.) The Policy provides that GuideOne "will pay compensatory damages for 'bodily injury' or 'property damage' for which any 'insured' becomes legally responsible because of an auto accident." (Declaration of James D. Vick in Support of Plaintiff's Motion for Partial Summary Judgment ("Vick Decl.") Ex. 1 at 10.) Scheel frequently traveled to Canada for work and bought a policy with GuideOne specifically so the policy would cover him while traveling. (Scheel Decl. ¶ 2.) The Policy provides that the "policy territory" is the Untied States, Puerto Rico, and Canada. (Vick Decl. Ex. 1 at 27.) The Policy dictates that the limit of liability is $25,000 as reflected in the declarations. (*Id.* at 12.) However, it goes on to provide:

**OUT OF STATE COVERAGE**

If an auto accident to which this policy applies occurs in any state or province other than the one in which "your covered auto" is principally garaged, we will interpret your policy for that accident as follows:

A. If the state or province has:

    1. A financial responsibility or similar law specifying limits of liability for "bodily injury" or "property damage" higher than the limit shown in the Declarations, your policy will provide the higher specified limit.

    2. A compulsory insurance or similar law requiring a nonresident to maintain insurance whenever the nonresident uses a vehicle in that state or province, your policy will provide at least the required minimum amounts and types of coverage.

(*Id.* at 13.) This language is consistent with the law of British Columbia, Canada, which sets minimum liability limits of Can$150,000 for personal injury protection ("PIP") insurance. *Insurance (Vehicle) Act* B.C. Reg. 447/83 Sched. 3, s.3(2) (West 2015).

    The Policy also contained an endorsement specific to Oregon which articulated the bounds of Scheel's personal injury protection ("PIP") insurance (the "Endorsement"). (Vick Decl. Ex. 1 at 46-51.) That Endorsement, which amends the broader Policy, obliges GuideOne to pay "personal injury protection benefits to an 'insured' who sustains bodily injury" so long as that injury is "caused by an accident" and arises out of "the ownership, maintenance, or use" of an automobile. (*Id.* at 47.) The Endorsement obliges GuideOne to pay "[a]ll reasonable and necessary expenses incurred within one year from the date of the accident for medical, hospital, [and] surgical" services. (*Id.*) The Endorsement makes no mention of the "OUT OF STATE COVERAGE" provision, but contains its own "LIMIT OF LIABILITY" section which limits GuideOne's liability to the PIP limit of $25,000 described in the Declarations. (*Id.* at 49.) Finally, the Endorsement specifically provides that any "amounts paid under [the] endorsement to an 'insured' shall reduce any amount that person may be entitled to recover for the same damages under Part A of this policy." (*Id.* at 49.)

    In an attempt to comply with Canadian laws governing minimum limits on PIP liability, GuideOne filed a "Power of Attorney and Undertaking" (the "PAU") in 2001. (Vick Decl. Ex. 2.)

The PAU appoints the Superintendent of Insurance for each province and territory of Canada as an agent to receive service of process on behalf of GuideOne. (*Id.*) The PAU also serves as GuideOne's promise not "to set up any defence to any claim, action, or proceeding" which it could not raise had the policy at issue been negotiated under and consistent with the laws "of the Province or Territory of Canada in which such an action or proceeding may be instituted . . . ." (*Id.*) Guideone also promises to pay all judgments "rendered against it or its insured by a Court in such Province or Territory" up to the greater of: (1) the limit of liability established by the insurance policy; or (2) "the minimum for that kind or class of coverage" in the Province or Territory in which the case is brought. (*Id.*)

## II. Scheel's Injury and the Claims Process

On July 25, 2013, Scheel was driving his car in British Columbia, Canada when a wheel came off of another vehicle and struck Scheel's car. (Scheel Decl. ¶ 3.) Following the accident, Scheel experienced tightness and pain in his neck, shoulders, and buttocks. (*Id.* at ¶ 6.) He also began experiencing bladder-control problems. (Declaration of Christine R. Olson ("Olson Decl.") Ex. 2, 3.)

Even before the accident, Scheel had experienced chronic back pain for years. In 1996, Scheel underwent surgery to fuse his L5 and S1 vertebrae. (*Id.*) That surgery failed and a second surgery was performed in 2007. (*Id.*) Scheel had a third back surgery in 2010 to correct a malfunctioning screw inserted during the 2007 procedure. (*Id.* at ¶ 4.) The surgeries resolved Scheel's pain, but resulted in a "mild foot drop," a gait abnormality which causes weakness or paralysis in the muscles of the foot or ankle. (*Id.*) In 2012, Scheel had an MRI on his lower back which revealed no problem which would have required treatment or surgery. (*Id.* at ¶ 5.)

OPINION & ORDER - 4                                                    [RMD]

Immediately after the accident, however, a new MRI revealed a herniation in his L2-L3 disc. (Olson Decl. Ex. 1 at 1.) He first sought treatment by Dr. Stephen Chaffee, who opined that he felt Scheel's low-back pain was "reasonably attributed to the [motor vehicle accident] in July." (*Id.*) In November 2013, Scheel met with neurosurgeon Dr. Jerry L. Hubbard, MD ("Dr. Hubbard") to discuss the possibility of surgery. (Olson Decl. Ex. 2.) Dr. Hubbard similarly diagnosed Scheel with a herniated lumbar disc, but opined that it was "unclear that the accident precipitated this problem. It may be secondary to underlying degenerative disc disease." (*Id.* at 3.) Upon receiving Dr. Hubbard's analysis, Scheel sought a second opinion. (Olson Decl. Ex. 3.)

In February 2014, Scheel was examined by another neurosurgeon, Dr. Serge Obukhoff, M.D. ("Dr. Obukhoff"). (Olson Decl. Ex. 4.) In his February 6, 2014 report, Dr. Obukhoff recounts Scheel's history of back problems and spinal surgeries. (*Id.*) He specifically discusses the 2012 MRI, which showed no disc abnormality at the L2-L3 disc. (*Id.*) Dr. Obukhoff diagnosed Scheel with an "L2-3 new disc herniation" and issued an "urgent request for surgery authorization." (*Id.* at 2-3.) In a subsequent letter, Dr. Obukhoff contrasted Scheel's 2012 MRI imaging, which showed no abnormality in the L2-L3 disc, with the post-accident MRI, which showed a "large disc herniation" at L2-L3. (Olson Decl. Ex. 12 at 1.) Dr. Obukhoff opined that the "need for surgery at L2-L3 arose due to the 7/25/13 motor vehicle accident. It is medically improbable that a significant change would occur from 2012 to 2013 without a significant injury." (*Id.* at 2.)

On May 1, 2014, Scheel's primary health insurer, Moda Health ("Moda") sent Scheel a letter explaining that two large bills associated with Scheel's treatment were pending because Moda was under the impression GuideOne would cover them. (Olson Decl. Ex. 7 at.) Through his attorney, Scheel contacted GuideOne in June 2014 to discuss the status of his claims. (Hazard Decl.

[RMD]

¶ 11.) GuideOne represented that as of that date, it had paid $7,133 and that Scheel's PIP liability limits were $25,000. (*Id.*) Scheel instructed his healthcare providers, and specifically the provider of his spinal surgery, to send all bills to GuideOne for payment. (*Id.* at ¶ 8.)

On June 18, 2014, GuideOne sent a letter to Scheel's treatment providers which incorrectly stated that Scheel's PIP liability limits of $25,000 had been exhausted, and it instructed the provider to bill Moda. (Declaration of Laurie Alt ("Alt Decl.") Ex. 6.) On June 27, 2015, just days after Scheel filed this lawsuit, GuideOne sent Scheel a letter explaining that the June 18, 2014 letter was in error and advising Scheel that it would not reimburse Scheel for the cost of the back surgery because it "was not related to the accident of July 25, 2013 . . . ." (Alt Decl. Ex 7.) Since then, GuideOne has tendered no additional payment to Scheel, Moda, or Scheel's healthcare providers. The most recent billing summary available on the record shows that GuideOne paid $7,448.00 on total charges of $96,904.33. (Vick Decl. Ex. 3 at 2.) GuideOne contends it has paid $10,850.78. (Hazard Decl. ¶ 15.)

## Legal Standard

A court should grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The moving party bears the burden of establishing that no issue of fact exists and that the nonmovant cannot prove one or more essential elements of a claim or defense. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). If the movant meets his burden, the nonmovant must "go beyond the pleadings [ ] by her own affidavits . . . [to] designate specific facts showing that there is a genuine issue for trial." *Id.* (internal quotation marks omitted). On summary judgment, the court

is bound to view all facts in a light most favorable to the nonmovant and must draw all justifiable inferences in the nonmovant's favor. *Narayan v. EGI, Inc.*, 616 F.3d 895, 899 (9th Cir. 2010).

*Discussion*

The parties have filed cross-motions for summary judgment. In his Motion for Partial Summary Judgment, Scheel asks the court to find that the insurance limits established in the PAU and under British Columbia, Canada law apply to set his insurance limit at Can$150,000 instead of the $25,000 limit which GuideOne argues applies. GuideOne moves for summary judgment on Scheel's claim in its entirety, arguing no reasonable jury could find that the medical expenses Scheel incurred were related to and caused by the automobile accident.

I. Scheel's Motion for Partial Summary Judgment

Scheel moves for partial summary judgment and argues that he is entitled to reimbursement up to a limit of Can$150,000 and not the $25,000 limit claimed by GuideOne. His argument is two-fold. First, Scheel contends the PAU binds GuideOne to abide by the minimum liability established under Canadian law. Second, he argues that, even without applying the PAU, the language of the policy requires GuideOne to reimburse him up to the higher limit of liability. GuideOne argues the lower limit applies because, under the plain text of the Policy and the PAU, the higher minimum liability limits apply only to lawsuits filed in Canadian court. GuideOne also argues that the lower limit applies because Scheel was not at fault in the accident, and the liability provisions of the Policy are not implicated. The court will first analyze the effect of the PAU. Thereafter, the court will examine the language of the Policy to determine which minimum-liability limit applies.

*A. The PAU*

The parties disagree about which law the court should apply to interpret the PAU. In Oregon, OR. REV. STAT. § 15.360 governs choice-of-law decisions. That section provides:

The most appropriate law is determined by:

(1) Identifying the states that have a relevant connection with the transaction or the parties, such as the place of negotiation, making, performance or subject matter of the contract, or the domicile, habitual residence or pertinent place of business of a party;

(2) Identifying the policies underlying any apparently conflicting laws of these states that are relevant to the issue; and

(3) Evaluating the relative strength and pertinence of those policies in:

(a) Meeting the needs and giving effect to the policies of the interstate and international systems; and

(b) Facilitating the planning of transactions, protecting a party from undue imposition by another party, giving effect to justified expectations of the parties concerning which state's law applies to the issue and minimizing adverse effects on strong legal policies of other states.

OR. REV. STAT. § 15.360. However, before the court can consider the factors articulated in the statute, it must first make the threshold determination of whether there is "a material difference between Oregon substantive law and the law of the other forum." *Waller v. Auto-Owners Ins. Co.*, 174 Or. App. 471, 475 (2001). If there is no difference, or there is merely a "false conflict," Oregon law applies. *Id.* Thus, the court must review the law of Oregon and Canada to determine whether there is a conflict in the law interpreting the PAU.

[RMD]

### 1. Oregon Law

Scheel contends that, even under Oregon law, the PAU conclusively establishes that GuideOne agreed to provide its policyholders with liability limits commensurate with the law of the territory or province of Canada in which its policyholders are driving. GuideOne posits that the PAU has no effect on its legal duties in actions brought in any jurisdiction outside of Canada, and is relevant to its duties only in cases brought in the court of a province or territory of Canada.

"The primary and governing rule of the construction of insurance contracts is to ascertain the intention of the parties." *Totten v. New York Life Ins. Co.*, 298 Or. 765, 770 (1985). If the insurance policy does not define the term or phrase in question, courts resort to a three-step analysis to determine the parties' contractual intent. *Hoffman Constr. Co. v. Fred S. James & Co.*, 313 Or. 464, 469-471 (1992). First, "[i]f the phrase in question has a plain meaning, we will apply that meaning and conduct no further analysis." *Holloway v. Republic Indem. Co.,* 341 Or. 642, 650 (2006). Second, "[i]f the phrase in question has more than one plausible interpretation . . . we examine the phrase in light of the context in which that [phrase] is used in the policy and the broader context of the policy as a whole." *Id.* Third, if any ambiguity remains, the court will construe the disputed language in favor of the insured. *Id.*

The PAU serves several purposes. First, it appoints the "Superintendents of Insurance" of British Columbia, Alberta, Saskatchewan, Manitoba, Ontario, New Brunswick, Nova Scotia, Prince Edward Island, Newfoundland, Quebec, and Yukon Territory, the Northwest Territories and Territory of Nunavut" as GuideOne's agent and authorizes those bodies to "accept service of notice or process on its behalf" for any legal "action or proceeding" arising out of an automobile accident

occurring in Canada. Second, the PAU serves as GuideOne's promise to abide by the limitations and responsibilities articulated in sections A through D.

Section C, the only portion of the PAU relevant to the court's analysis, contains two promises. First, GuideOne promises:

> Not to set up any defence to any claim, action, or proceeding, under a motor-vehicle liability insurance contract entered into by it, which might not be set up if the contract had been entered into in, and in accordance with the laws relating to motor vehicle liability insurance contracts or plan of automobile insurance of the Province or Territory of Canada in which such action or proceeding may be instituted . . . .

(Scheel Decl. Ex. 2.) The plain text of this clause shows that it serves as a promise not to raise a defense to a legal challenge to the denial of a claim to the extent that defense is inconsistent with the laws of the "province or Territory of Canada in which such [legal] action" has been brought. The final portion of this section shows that GuideOne's promise applies only in cases brought in a territory or province of Canada and would not apply to cases filed in this jurisdiction.

Moreover, GuideOne's promise "[n]ot to set up any defence" inconsistent with the laws of the Canadian forum does not substantively effect GuideOne's duties under the Policy. Instead, it serves as a waiver of certain legal defenses which would available to GuideOne under the Policy had the action been brought in another jurisdiction. The court notes that no policyholder is party to the PAU — only GuideOne signed the PAU and the language of that document shows that the promises contained therein run from GuideOne to the governments of the provinces and territories of Canada.

In the second clause of Section C, GuideOne promises "to satisfy any final judgment . . . by a Court in such Province or Territory . . . up to the greater of" the liability limits articulated in the policy or the minimum limits of coverage "required by the laws of the Province or Territory" in which the judgment is rendered. This portion of Section C further supports the court's conclusion

OPINION & ORDER - 10                                                                                    [RMD]

that the PAU applies only to cases brought in Canada because it provides that the minimum liability limit should be supplied by the province or territory in which the judgment was rendered and not the laws of the territory or province in which the accident occurred. Thus, this section could only apply to a case brought in Canada and governed by the laws of Canada. Therefore, under the plain-text interpretation required by Oregon law, the PAU would not affect GuideOne's duties under the Policy and would not affect GuideOne's limits of liability in this case because it was brought outside of Canada.

2. British Columbia Law

The laws of British Columbia and Oregon are similar: the court seeks to give effect to the "express terms of the contract." *Diotte v. Ins. Corp. of British Columbia*, 2000 BCSC 1799 ¶ 43 [2000]. "The golden rule is that the literal meaning must be given to the language of the contract, unless this would result in absurdity. Words of ordinary use in contract must be construed in their ordinary and natural sense." *Id.* (quoting *The Law of Contracts,* 4d (Toronto: Carswell, 1999), at p. 478).

GuideOne argues that there is no conflict of law between Oregon and Canada because, similar to Oregon law, the ultimate aim of Canadian law is the determine the intent of the parties according to the plain text of the policy. Thus, according to GuideOne, the court's analysis should stop here and the court should apply Oregon law to interpret the PAU. However, the court is not convinced that the analysis must end here, as significant caselaw exists in Canada interpreting the effect of PAUs. Many of those cases have come to different conclusions about how PAUs apply than the interpretation which would be required under Oregon's three-step interpretive method.

[RMD]

In determining the effect of PAUs, Canadian courts have gone beyond the mere text of the PAUs and analyzed the practicalities surrounding their application. First, although the plain text of the PAU appears to be an agreement only between an insurance company and the various Canadian provincial governments, courts in Canada have held that the PAU serves as a contract running:

> at a minimum [to], (1) every person with whom [the insurer] has a contract of insurance; (2) every person who qualifies as an insured under a contract of insurance between [the insurer] and another party, including the plaintiffs; (3) the Superintendent [of Financial Institutions with whom the PAU is filed]; and (4) all other insurers who carry on business in [British Columbia].

*Id.* at ¶ 39. Moreover, courts in Canada have determined that the mandatory insurance requirements in cases like this one are supplied by the forum in which the accident took place and not the forum in which the case was brought. *Wawanesa Mut. Ins. Co. v. Lindblom*, 2001 ABCA 102, ¶¶ 40-52 [2001].

In *Wawanesa,* a policyholder defendant who resided in the province of Alberta purchased an insurance policy from the plaintiff, her insurer. *Id.* The defendant was involved in an automobile accident in British Columbia. *Id.* at ¶ 4. The plaintiff filed an insurance claim to cover her personal injuries in the amount of the minimum PIP limit established under British Columbia law, but the insurer denied her claim. *Id.* The insurer argued that the liability limits of Alberta applied, which were much lower than those of British Columbia. *Id.* Before the policyholder could file a lawsuit, the insurer filed a claim for declaratory judgment in Alberta and promptly filed a PAU nearly identical to the PAU in this case. *Id.* at ¶ 7. The policyholder filed her own lawsuit in British Columbia, but the insurer successfully moved to stay the British Columbia suit until the Alberta claim was resolved. *Id.* at ¶¶ 7-10.

OPINION & ORDER - 12                                                                [RMD]

In the Alberta lawsuit, the policyholder argued in a pretrial motion that under the PAU and relevant statutes, British Columbia law supplied the applicable liability limit. *Id*. at ¶ 13. The court disagreed and, after a stipulated-facts trial, entered a judgment in favor of the insurer. *Id*. The policyholder appealed, and the court of appeals reversed. *Id*. at ¶ 61. The court of appeals undertook a choice-of-law analysis similar to an *Erie* analysis, and determined British Columbia law must apply to prevent an insurer from forum shopping by racing to file a declaratory judgment in a jurisdiction with more favorable law. *Id*. at ¶¶ 49, 55-59.

Under law, the court must resolve two issues. First, whether the PAU is a contract between the insured and the insurer to pay the minimum PIP limits established by Canadian law. Second, whether, regardless of where Scheel brought his claim, the province in which the accident occurred supplies the applicable PIP liability limit. As demonstrated by the preceding analysis, the court would come to starkly different conclusions were it to apply Oregon law. Despite GuideOne's contention that no conflict exists between Oregon and Canadian law, it is clear there is a conflict of law. Therefore, the court must next determine which law to apply.

### 3. Relative Interests

Upon examination of the relative laws of contract interpretation, specifically interpretation of PAUs, the court concludes an actual conflict exists between Oregon law and Canadian law. Thus, the court must determine which jurisdiction has the "most significant interest" in having its law applied. *Casey v. Manson Const. & Eng'g Co.*, 247 Or. 274, 278-79 (1967); *Citizens First Bank v. Intercontinental Express, Inc.*, 77 Or. App. 655, 657-58 (1986). In determining which jurisdiction has the "most significant relationship," Oregon courts have cited favorably the approach articulated

[RMD]

in the Second Restatement, Conflict of Laws. *Casey*, 247 Or. at 278. Under that approach, the court should analyze the following factors:

>  (a) the place of contracting,

>  (b) the place of negotiation of the contract,

>  (c) the place of performance,

>  (d) the location of the subject matter of the contract, and

>  (e) the domicile, residence, nationality, place of incorporation and place of business of the parties.

RESTATEMENT (SECOND) CONFLICT OF LAWS § 188(2) (AM. LAW INST. 1971). The Restatement also commands that "[t]hese contacts are to be evaluated according to their relative importance with respect to the particular issue." *Id.*

Here, nearly all of the factors weigh in favor of applying the law of Canada. The PAU was executed and negotiated between Canada and GuideOne. Further, the PAU's subject matter pertains exclusively to the minimum liability limits to which GuideOne will be held while its policyholders operate automobiles in Canadian territory. The place of performance is also Canada, as the heightened minimum liability limits apply only while GuideOne's policyholders operate insured vehicles on Canadian highways. Although the Policy at issue in this case was issued in Oregon, Oregon has little to no connection to the PAU or its purpose. Thus, the law of British Columbia should apply to determine the effect of the PAU. Because Canadian courts have interpreted PAUs to hold insurers to the minimum liability limits of the territory in which the accident occurs, the PAU requires that GuideOne be held to the higher minimum liability limit of Can$150,000.

[RMD]

### B. *The Policy*

Even if the PAU was inapplicable, however, the language of the Policy dictates that GuideOne be held to the higher limit of PIP liability. Neither party contends Canadian law applies to interpret the Policy. Therefore, the court will apply Oregon's three-step analysis for interpreting insurance contracts.

At issue here is the intersection of several policy provisions. Primarily, the provisions governing out of state coverage and the PIP Endorsement. Part A provides that GuideOne "will pay compensatory damages for 'bodily injury' or 'property damage' for which any 'insured' becomes legally responsible because of an auto accident. Damages include prejudgment interest awarded against the 'insured'." (Scheel Decl. Ex. 1 at 10.) Later in Part A, the Policy explains GuideOne's "LIMIT OF LIABILITY":

> The limit of liability shown in the Declarations for each person for "Bodily Injury" liability is our maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of "bodily injury" sustained by any one person in any one auto accident. Subject to this limit for each person, the limit of liability shown in the Declarations for each accident for "bodily injury" resulting from any one auto accident.

(*Id.* at 12.) The Policy defines "bodily injury" as "bodily injury, sickness or disease, including death that results at any time." (*Id.* at 46.) Finally, under the heading "OUT OF STATE COVERAGE," (the "Out of State Coverage Clause") Part A provides:

> If an auto accident to which this policy applies occurs in any state or province other than the one in which "your covered auto" is principally garaged, we will interpret your policy for that accident as follows:
>
> A. If the state or province has:

OPINION & ORDER - 15                                                    [RMD]

1. A financial responsibility or similar law specifying limits of liability for "bodily injury" or "property damage" higher than the limit shown in the Declarations, your policy will provide the higher specified limit.

2. A compulsory insurance or similar law requiring a nonresident to maintain insurance whenever the nonresident uses a vehicle in that state or province, your policy will provide at least the required minimum amounts and types of coverage.

The Endorsement provides that GuideOne "will pay personal injury protection benefits to an "insured" who sustains 'bodily injury'." (Scheel Decl. Ex. 1 at 47.) The endorsement defines "insured" as the policyholder, a member of the policyholder's family or "any other person who sustains 'bodily injury'" while using the policyholder's car or who was "[a] 'pedestrian' struck by" the policyholder's vehicle.

The court concludes the plain text of the Out of State Coverage Clause unambiguously applies to claims for personal injury. GuideOne is correct that the Endorsement articulates different limits of liability than those which apply to claims filed under Part A. However, the Out of State Coverage Clause specifically provides that it will pay the minimum limit for "bodily injury" established by the foreign state's law. The Endorsement promises to pay "personal injury protection benefits to any 'insured' who sustains 'bodily injury,'" and specifically provides medical expenses as one benefit recoverable under the Endorsement. Because the Endorsement and the Out of State Coverage Clause both define the policyholder's right with reference to coverage for "bodily injury," the court concludes both sections objectively manifest the parties' intent for the Out of State Coverage Clause to supply the liability limits for PIP claims made after an accident occurring in a foreign state. Moreover, the Out of State Coverage Clause provides that if the jurisdiction in which the insured is driving has a "compulsory insurance or similar law requiring a nonresident to maintain

OPINION & ORDER - 16                                                    [RMD]

insurance whenever the nonresident uses a vehicle in that state or province, your policy will provide at least the required minimum amounts and types of coverage." In this case, British Columbia, Canada requires that all drivers maintain minimum limits of PIP coverage at a level of Can$150,000. Thus, the plain text of the Policy promises Scheel that GuideOne will supply him with PIP coverage in the amount of Can$150,000 in the event he is involved in an automobile accident in British Columbia, Canada.

GuideOne argues the Out of State Coverage Clause is contained within Part A and not the Endorsement, thus it applies only to claims under Part A. It argues further that Part A applies only to claims by third parties injured by an accident for which the policyholder is at fault. GuideOne's argument is not persuasive for two reasons. First, GuideOne's argument is based on the context in which this Policy provision lies. At step-one of the Policy interpretation analysis, the court may consider only the plain text of the Policy language.

Second, even if the plain text of the relevant sections was ambiguous and the court considered the context in which those sections lie, the language of the Policy and the intent of the parties remains ambiguous. The insuring agreement in Part A promises, in imprecise language, that GuideOne will pay "compensatory damages for 'bodily injury' or 'property damage' for which any 'insured' becomes legally responsible because of an auto accident." Reasonable minds could disagree as to whether Part A covers claims for personal injury by the policyholder. GuideOne's interpretation that this section applies to third-party claims for which the policyholder is at fault is a reasonable one. But because an injured individual becomes "legally responsible" to pay medical bills resulting from an accident for which the insured was not at fault, it is equally reasonable to interpret this clause to cover claims made by the policyholder to reimburse the policyholder for his

[RMD]

or her medical bills for which the policyholder "becomes legally responsible" after the care provider issues a bill to the plaintiff.

The insuring agreement also defines coverage with reference to "bodily injury," a term defined in the Endorsement and used in the Endorsement to articulate the scope of the policyholder's PIP benefits. This interpretation is even more reasonable given the language of the Endorsement, which contemplates a situation where an individual could recover under both Part A and the Endorsement. The "LIMIT OF LIABILITY" section of the Endorsement provides:

> 1. The limits of liability shown in the Schedule or Declarations for Personal Injury Protection Coverage are the most we will pay to an "insured" as the result of any one "motor vehicle accident[.]"
>
> . . . .
>
> 4. Any amounts paid under this endorsement to an "insured" shall reduce any amount that person may be entitled to recover for the same damages under Part A of this policy.

(Vick Decl. Ex. 1 at 49.) It is possible the parties intended only third-parties to receive duplicative recovery under the Policy, as the Endorsement defines "insured" to include the policyholder, the policyholder's family, and pedestrians "struck by a 'motor vehicle,'" but the language used throughout the contract does not make that clear. (*Id.* at 47.) Analyzing the context in which the relevant sections lie, including the context GuideOne argues the court should consider, does not disambiguate the language of the Endorsement and the Out of State Coverage Clause as those sections apply to Scheel's claim. Even if the plain-text of the relevant sections was ambiguous at step-one, those sections would remain ambiguous after analyzing their context at step-two, and the court would be compelled to interpret the Policy in Scheel's favor on step-three. Therefore, the court concludes that under the language of the Policy, the Can$150,000 limit established by British Columbia applies to Scheel's claim, and Scheel's motion for partial summary judgment is granted.

[RMD]

II.  GuideOne's Motion for Summary Judgment

GuideOne filed its own motion for summary judgment and argues that it is not liable to Scheel for the cost of his back surgery because no reasonable jury could find Scheel's back surgery was a "reasonable and necessary" result of his automobile accident.  Scheel contends there is expert evidence suggesting his back injury resulted from the car accident and that the surgery was a "reasonable and necessary" remedial procedure to correct his injury.  Thus, according to Scheel, genuine issues of material fact preclude summary judgment in GuideOne's favor.

*A.  Evidentiary Objections*

Before the court considers the merits of GuideOne's motion for summary judgment, it must address an evidentiary objection GuideOne raises in its Reply.  GuideOne contends Scheel failed to authenticate and failed to adequately lay the foundation to introduce Scheel's medical records, including the medical opinion of Dr. Obukhoff.

Federal Rule of Civil Procedure 56(c)(2) provides that, "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence."  Rule 56 continues:

> If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:
>
> (1) give an opportunity to properly support or address the fact;
>
> (2) consider the fact undisputed for purposes of the motion;
>
> (3) grant summary judgment, if the motion and supporting materials — including the facts considered undisputed — show that the movant is entitled to it; or
>
> (4) issue any other appropriate order.

OPINION & ORDER - 19                                                              [RMD]

FED. R. CIV. P. 56(e).  For evidence to be "properly supported" and thus admissible, it must be authenticated.  FED. R. EVID. 901.  "To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is."  FED. R. EVID. 901(a).  The Ninth Circuit has taken a plain-text interpretation of Rule 56(c)(2), and held that evidence may be considered at the summary judgment stage where the evidence "could be presented in an admissible form at trial . . . ."  *Fraser v. Goodale*, 342 F.3d 1032, 1037 (9th Cir. 2003).

Here, there is no indication Scheel will be unable to lay the foundation for introduction of his medical records.  Scheel's medical records may be admitted upon proper authentication by Dr. Obukhoff at trial.  Therefore, the court denies GuideOne's Motion to Exclude with leave to raise the motion again as a pre-trial motion in limine.

B. *Promissory estoppel*

GuideOne argues in its reply that Scheel should be "estopped form presenting evidence the surgery was related to the claim because [Scheel]" filed this lawsuit.  The court disagrees.  To prove a claim or defense on the basis of promissory estoppel, the party asserting must prove four elements: "(1) a promise (2) which the promisor, as a reasonable person, could foresee would induce conduct of the kind which occurred, (3) actual reliance on the promise (4) resulting in a substantial change in position."  *Neiss v. Ehlers*, 135 Or. 218, 223 (1995).

Here, GuideOne presents no evidence Scheel, or an agent acting on Scheel's behalf, made a binding promise to GuideOne to not file a suit for breach of the Policy.  Nor does GuideOne present evidence Scheel or his agent made a promise not to introduce evidence that his medical bills were reasonably related to the car accident giving rise to his claim under the Policy.  Because no

OPINION & ORDER - 20                                                               [RMD]

evidence exists Scheel made a such a promise to GuideOne, GuideOne cannot prove the first essential element to its defense of promissory estoppel. Therefore, this portion of GuideOne's motion for summary judgment is denied.

### C. Merits of GuideOne's Motion

GuideOne moves for summary judgment on Scheel's claim for breach of the Policy. Scheel argues that GuideOne failed to rebut the statutory presumption that his back injury was caused by his automobile accident, and that the evidence submitted in response to GuideOne's motion created a genuine issue of material fact on whether he may succeed in his claims.

OR. REV. STAT. § 742.520(1) mandates that all automobile insurance policies issued in Oregon contain "personal injury protection benefits." The personal injury protection benefits must cover all "reasonable and necessary expenses of medical, hospital, dental, surgical, ambulance and prosthetic services incurred within two years after the date of the person's injury." OR. REV. STAT. § 742.524(1)(a). When a policyholder, or other person covered under a personal injury protection policy, files a claim under that section of the policy, the treatment "presumed to be reasonable and necessary unless the" insurer denies the claim within sixty days of the date on which the claim is filed. *Id.* The legal presumption established by § 742.524(1)(a) "functions as any other civil presumption, *i.e.,* it shifts the burden of proof to the party against whom it is directed — in this case, the insurer." *Ivanov v. Farmers Ins. Co. of Ore.*, 344 Or. 421, 429 (2008). "To challenge a denied claim, the insured may submit to binding arbitration under ORS 742.520(6) and ORS 742.522 or, as [Scheel] did in this case, file a civil action against the insurer." *Id.* Where an insurer sufficiently rebuts the presumption of reasonableness and necessity, the burden no longer lies with the insurer

[RMD]

to prove the absence of reasonableness and necessity. *Id.* Instead, the burden would naturally shift back to the plaintiff to show a prima facie case of breach of contract. *Id.*

It is unclear under Oregon law whether the presumption of reasonableness and necessity is sufficiently rebutted where, as here, the insurer denies a claim within the sixty-day statutory period, but for an erroneous or contractually insufficient reason. It is, however, irrelevant for the purposes of this motion whether the burden of persuasion lies with Scheel or GuideOne, as Scheel produces evidence which demonstrates a genuine issue of material fact under either burden allocation. On a motion for summary judgment, the movant has the initial burden of demonstrating there are no issues of material fact and that the nonmovant cannot prove an element essential to his or her claim or defense. If the movant meets this burden, the nonmovant must introduce evidence showing the existence of a genuine issue of material fact.

The parties in this case did just that. GuideOne produced evidence suggesting Scheel's back injury pre-existed the automobile accident and was not covered under the Policy as a result. In response, Scheel produced the medical reports of Dr. Obukhoff in which he states the back injury and associated bladder-control issues "started after the motor vehicle accident, July 25, 2013, when his car was hit by another vehicle and pain started in his lower back. Since that time, he has been having constant pain and there is no improvement despite physical therapy." (Olson Decl. Ex. 4 at 1.) In another chart note, Dr. Obukhoff wrote that Scheel "sustained injuries during a motor vehicle accident." (Olson Decl. Ex. 5 at 1.) Finally, Scheel introduced a memorandum written by Dr. Obukhoff summarizing how he came to the conclusion that the accident caused Scheel's back injury. (Olson Decl. Ex. 12 at 1-2.) He explains that an MRI predating the accident showed no abnormality in the L2-L3 vertebral juncture, but that problems at the L2-L3 disc arose immediately after the

incident and led to the symptoms necessitating the back surgery. (*Id.*) At this stage in the case, it is irrelevant whether Scheel or GuideOne bears the initial burden of production. As soon as one party demonstrates a genuine issue of material fact, the court's analysis is ended and the court should deny the motion for summary judgment. Scheel has demonstrated such a genuine issue of material fact. Therefore, the court denies GuideOne's Motion for Summary Judgment.

*Conclusion*

For the aforementioned reasons, the court GRANTS Scheel's Motion for Partial Summary Judgment (Dkt. No. 6) and DENIES GuideOne's Motion for Summary Judgment (Dkt. No. 13).

IT IS SO ORDERED

DATED this 24th day of March, 2016.

_____<br>
JOHN V. ACOSTA<br>
United States Magistrate Judge