UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| GERALD SCHEEL, | Case No. 3:15-cv-1112-AC |
| Plaintiff, | FINDINGS OF FACT AND |
| v. | CONCLUSIONS OF LAW |
| GUIDEONE MUTUAL INSURANCE COMPANY, an Iowa corporation, | |
| Defendant. | |

ACOSTA, Magistrate Judge:

*Introduction*

Plaintiff Gerald Scheel ("Scheel") was injured in an automobile collision in British Columbia, Canada ("the Collision"). At the time of the Collision, Scheel had an insurance policy ("the Policy") with GuideOne Mutual Insurance Company ("GuideOne"). The Policy's Personal Injury Protection ("PIP") coverage obligated GuideOne to pay Scheel's reasonable and necessary medical expenses after an automobile collision. Scheel had surgery on his lower back following the collision to treat a herniated disc between the L2 and L3 vertebrae ("the Surgery"). Scheel incurred

$98.832.78 in medical, surgical, and hospital expenses because of the Surgery. Scheel's medical providers state that the Surgery was necessary because of the Collision.

GuideOne did not believe the Surgery was related to the Collision, based on an oral representation from an employee of Moda, Scheel's primary medical insurer, despite having medical records indicating the Collision caused Scheel's back injury. Although GuideOne paid some of Scheel's medical expenses related to the Surgery, GuideOne did not pay most other expenses related to the Surgery. Moda later satisfied Scheel's outstanding expenses for $16,158.09, and requested reimbursement from Scheel. Scheel reimbursed Moda $12,500, which Moda accepted as full repayment. After GuideOne did not pay Scheel's provider or medical insurer, Scheel initiated this lawsuit, alleging GuideOne's failure to pay the expenses related to the Surgery breached the Policy.

The court previously granted partial summary judgment to Scheel, finding that the higher PIP coverage limit required under British Columbia law applied to GuideOne's obligations in this case. (ECF No. 28.) The Court also denied GuideOne's motion for summary judgment regarding the relatedness of the Surgery to the collision, finding that Scheel presented a genuine issue of material fact by providing evidence suggesting the back surgery was necessary because of the collision. (*Id.* at 19.) Based on the evidence of relatedness that Scheel presented at summary judgment, GuideOne now concedes the Surgery was necessary because of the Collision.

Scheel contends GuideOne breached the Contract by not paying all of the Surgery-related expenses which he incurred. He seeks monetary damages equal to the amount of his Surgery-related expenses that GuideOne should have paid under the Policy, less the amount GuideOne has already paid. GuideOne argues it was not obligated to pay until Scheel provided sufficient proof that the Surgery was related to the Collision, and that Scheel breached the Policy by filing suit before

providing proof of relatedness. In the alternative, GuideOne seeks to limit Scheel's recovery to the $12,500 he paid out-of-pocket for the Surgery. GuideOne also argues Scheel is not entitled to attorney fees.

On March 22, 2017, Scheel's case was tried to the court. Upon review and consideration of the pleadings, trial memoranda, sworn declarations, exhibits, and final arguments, the court makes the following Findings of Fact and Conclusions of Law pursuant to Rule 52(a)(1) of the Federal Rules of Civil Procedure.[1]

*Findings of Fact*

1. Scheel was involved in an automobile collision ("the Collision") in British Columbia, Canada, on July 25, 2013. (Jt. Stipulated Facts (ECF No. 45) ¶ 5.)

2. Scheel sustained physical injuries because of the collision. (*Id.* ¶ 6.)

3. Scheel and GuideOne were parties to an insurance policy, ("the Policy") which was in effect on July 25, 2013. (*Id.* ¶ 3.)

4. The Policy provided Personal Injury Protection ("PIP") coverage for bodily injuries arising from automobile collisions. (Decl. of James D. Vick, ECF No. 8, Ex. 1 ("Policy"), at 47–51.)

5. The Policy specifically covered: "All reasonable and necessary expenses incurred within one year from the date of the accident for medical, hospital, dental, surgical, ambulance and prosthetic services." (*Id.* at 47.)

6. Scheel began experiencing pain in his back, neck, and buttocks, loss of bladder control, and stiffness after the Collision. (Decl. of Christine Olson ("Olson MSJ Decl.") (ECF No. 18), Exs.

---

[1] The parties have consented to jurisdiction by magistrate judge pursuant to 28 U.S.C. § 631(c)(1).

1–3.) Scheel had a history of back problems. (*Id.*) His new symptoms were in a different location than his prior injuries. (*Id.*) Scheel had two back surgeries several years prior to the Collision. (*Id.* Ex. 2 at 2.)

7. Scheel's primary-care physician observed a new disc herniation between the L2 and L3 vertebrae, and concluded that the herniation was "reasonably attributed to the [Collision]." (Olson MSJ Decl., Ex. 1 at 2.) Scheel's primary-care physician referred him to a neurosurgeon. (*Id.*) The neurosurgeon, Dr. Hubbard, confirmed the disc-herniation observation, noting that the Collision preceded Scheel's symptoms but stating that it is unclear whether the Collision caused the herniation. (*Id.* Ex. 2 at 2–3.) Dr. Hubbard told Scheel that surgery was an available option. (*Id.* at 3.) In a chart note from a follow-up visit with Scheel, Dr. Hubbard suggests that the L2–L3 herniation is "more likely due to degen[arative] disease than from his trauma." (Decl. of Laurie Alt (ECF No. 14), Ex. 2 at 3. Scheel sought a second opinion to avoid additional back surgeries. (Olson MSJ Decl., Ex. 3.)

8. Dr. Obukhoff, a neurosurgeon practicing in California, provided Scheel a second opinion. (Olson MSJ Decl., Ex. 4.) In his notes, Dr. Obukhoff stated that the pain began after the Collision. (*Id.* at 1.) Dr. Obukhoff recommended surgery to address Scheel's back injury. (*Id.* at 3.)

9. In February, 2014, Dr. Obukhoff performed the recommended surgery ("the Surgery") on Scheel at Monrovia Memorial Hospital ("Monrovia"). (Olson MSJ Decl., Ex. 6; Jt. Stip. Facts ¶ 8.)

10. On April 30, 2014, GuideOne adjuster Laurie Alt ("Alt") spoke with a Moda adjuster. (Olson MSJ Decl., Ex. 2 ("Alt Dep."), at 36:13–20.) When asked at deposition about this conversation, Alt did not recall it. (*Id.* at 35:20.) Alt's notes from the conversation state "GERALDD (sic) HAD BACK SURGERY 2/14 DEGENERATIVE 70K PLUS, SHE WILL PAY THAT." (*Id.* Ex. 6 (capitalization in original).) Alt understood her note to mean that the Moda adjuster told her that the

Surgery was unrelated to the Collision and that Moda would pay expenses related to the Surgery. (*Id.* 37:17; 38:18–39:1.)

11. After the Surgery, but before May 1, 2014, Dr. Obukhoff and Monrovia submitted to Moda bills for medical expenses related to the Surgery. (Olson MSJ Decl., Ex. 7 at 2.) Moda left both bills pending without payment because they believed GuideOne should pay the benefits under the PIP coverage. (*Id.* at 1.) Moda's attorney expressed their position regarding the pending bills to Scheel's attorney on May 1, 2014. (*Id.*)

12. Dr. Obukhoff and Monrovia submitted to GuideOne bills for Surgery-related expenses at some time in June, 2014. (Decl. of Kathryn Hazard (ECF No. 17) ¶ 11–13.)

13. GuideOne did not pay the bills from Dr. Obukhoff or Monrovia. (Jt. Stip. Facts ¶ 11.) GuideOne paid some Surgery-related bills from other providers. (*Id.* ¶ 12.) During her deposition, Alt did not recall why GuideOne did not pay the Surgery-related medical bills which it received. (Alt Dep. at 43:9.)

14. GuideOne sent Monrovia a letter on June 18, 2014, representing that Scheel had exhausted his $25,000 in PIP benefits. (Jt. Stip. Facts ¶ 17.) GuideOne's letter was factually incorrect; Scheel had not received $25,000 in PIP benefits. (*Id.* ¶ 18.) GuideOne sent a letter correcting its factual error in July, 2015, after Scheel filed this lawsuit. (*Id.* ¶ 19.)

15. GuideOne did not issue a letter denying Scheel's claim for PIP benefits prior to the filing of this lawsuit. (Jt. Stip. Facts ¶ 32.) GuideOne did not issue a notice of denial of charges to Monrovia Hospital within 60 days of receiving medical bills from Monrovia or at any point prior to the filing of this lawsuit. (Olson Decl. (ECF No. 50), Ex. 1 at 8.) The record also does not contain any communication from GuideOne to Scheel prior to the filing of this lawsuit asserting that the

Collision did not cause the L2–L3 herniation or that the Surgery was not a necessary medical expense related to the Collision.

16. The total amount billed to Scheel for Surgery-related expenses was $98,832.78. (Olson Decl., Ex. 4 at 2–5.) Under Oregon's worker's compensation fee schedule, GuideOne would have paid $85,046.05 for Scheel's Surgery-related medical expenses. (*Id.*) GuideOne paid $8,779.78 of those expenses, and a medical provider wrote off an additional $33. (*Id.*; Jt. Stip. Facts ¶ 29.)

17. Moda resolved Scheel's outstanding medical expenses for $16,158.09. (Jt. Stip. Facts ¶ 21.) After recovering Can$ 139,874.50 from the tortfeasor in the Collision, Scheel reimbursed Moda for its Surgery-related payments. (*Id.* ¶ 23.) Moda did not seek additional reimbursement from Scheel. (*Id.*)

18. Scheel filed this lawsuit in Multnomah County Circuit Court on May 14, 2015. (Jt. Stip. Facts ¶ 24; ECF No. 1, Ex. 1 at 7.) GuideOne removed the lawsuit to this court on June 19, 2015. (ECF No. 1.)

19. Moda has not sought contribution from any party. (Jt. Stip. Facts ¶ 34.) Scheel has not assumed any right to recover on behalf of Moda or any healthcare provider. (*Id.* ¶ 33.)

20. On September 29, 2015, Scheel submitted a letter from Dr. Obukhoff as part of his opposition to GuideOne's motion for summary judgment. (Olson MSJ Decl., Ex. 12 ("Obukhoff Letter".) Dr. Obukhoff's letter states:

> A concern has been raised about whether or not the need for surgery, for patient Gerald Scheel in February 2014, arose due to the motor vehicle accident occurring 07/25/13. This question is absurd.
>
> In this case, we have the benefit of imaging before and after the motor vehicle accident, as well as the patient's own history, and, these correlate.

> In 2012, . . . a CT scan was performed and there was no disc herniation noted at L2–L3 by the radiologist. After the 07/25/13 motor vehicle accident . . . the imaging changed and a large disc herniation was present, obliterating the central canal.
>
> The patient's own history also indicated that there was a significant change in symptoms . . . only after the accident. . . . . The need for surgery at L2–L3 arose due to the 07/25/13 motor vehicle accident. It is medically improbable that a significant change would occur from 2012 to 2013 without a significant injury.
>
> We are not talking about the lower lumbar discs which had been operated on in the past by different surgeons. We are talking about the L2–L3 disc which was normal on 05/06/12 per the radiologist. It is medically probable that the injury at L2–L3 was caused by the tremendous impact and rotational forces occurring during the motor vehicle accident [on] 07/25/2013.

(*Id.* at 1–2.) Dr. Obukhoff's letter is dated September 17, 2015. (*Id.*)

21. The Collision caused the L2–L3 herniation. Dr. Obukhoff's conclusions, based in part on imaging conducted before and after the Collision, explains a causal relationship between the Collision and the L2–L3 herniation. (Obukhoff Letter at 1–2.) During the bench trial, GuideOne's counsel stated that GuideOne no longer contests the relatedness of the Surgery and Collision. (Tr. of Bench Trial at 12:19.)[2]

*Conclusions of Law*

I. Liability.

1. The Policy was a valid contract between Scheel and GuideOne.

2. The Policy's PIP provisions obligated GuideOne to pay benefits if Scheel suffered bodily injury in a motor-vehicle accident. (Policy at 45–46.) The PIP benefits include "all reasonable and necessary expenses incurred within one year from the date of the accident for medical, hospital,

---

[2] This transcript is a rough draft transcript, and not a Court Reporter Certified transcript of the March 22, 2017 bench trial. The court is nonetheless confident that GuideOne's counsel so represented GuideOne's change of position on the relatedness issue.

Page 7 - FINDINGS OF FACT AND CONCLUSIONS OF LAW                                    [TJP]

dental, surgical, ambulance and prosthetic services." (*Id.* at 46, ¶ II.B.1.)

3. Scheel suffered bodily injury due to the Collision, specifically a herniation of the L2–L3 disc. This occurrence obligated GuideOne to pay "all reasonable and necessary" medical expenses incurred to treat the L2–L3 herniation.

4. As used in the Policy, Scheel "incurred" the Surgery-related expenses at the time of treatment. Under Oregon's rules of contract interpretation, courts first inquire whether a term has a plain meaning. *Groshong v. Mutual of Enumclaw Ins. Co.*, 329 Or. 303, 308 (1999). Here, the court concludes that "expenses incurred" has a plain meaning — expenses to which a person has become liable or subject. Oregon courts have repeatedly defined "incur" according to its common meaning: "to become liable or subject to." *See, e.g.*, *White v. Jubitz Corp.*, 219 Or App. 62, 66 (2008) (citing *Webster's Third New Int'l Dictionary* 1146 (unabridged ed. 2002), *aff'd* 347 Or. 212 (2009). While GuideOne argues that Scheel incurred only the amount he paid out of pocket to satisfy Surgery-related charges, it does not, however, explain why "incurred" does not have its common meaning or explain why "incurred" means "paid." Moreover, GuideOne relies on the *White* definition of "incurred" in a different portion of its trial memorandum. (Def.'s Trial Mem. at 10.) Accordingly, "incurred" has the plain meaning of "to become liable or subject to." Scheel incurred — that is, became liable for — the relevant expenses at the time of treatment. *See White*, 219 Or. App. at 66–67 (holding that medical expenses are incurred at the time of treatment because the patient is liable for medical expenses at the time of treatment, and rejecting an argument that expenses are incurred only once paid).

5. GuideOne breached its obligations under the Policy when it failed to pay the medical, hospital, and surgical expenses Scheel incurred due to the L2–L3 herniation. Scheel incurred $98,832.78 in

Surgery-related medical expenses. *See* Findings of Fact, ¶ 15, *supra*. Oregon law allowed GuideOne to pay those expenses for the lesser amount of $85,046.05, based on Oregon's worker's compensation schedules. *Id.* To date, GuideOne has paid $8,779.78 of the expenses Scheel incurred. *Id.* GuideOne's failure to pay all of the Surgery-related expenses Scheel incurred, subject to the decrease allowed by ORS § 742.525, was a material breach of its contractual obligation.

6. Scheel's purported delay in providing documentation of the relationship between the Collision and Surgery does not excuse GuideOne from its contractual obligations. GuideOne asserts that Scheel improperly delayed in providing notice that the Surgery was related to the collision, excusing GuideOne from performance under the "delayed notice" doctrine. The delayed-notice doctrine may excuse an insurer's policy obligations when the insured "fails to give immediate notice to the insurer of a possible claim." *Emps.' Ins. of Wausau v. Tektronix, Inc.*, 211 Or. App. 485, 494 (2007) (delayed-notice doctrine implicated by 12-year delay in notifying insurer of potential environmental-contamination claim). GuideOne contends that Scheel delayed in providing documentation supporting his claim, not that the initial notice of a claim was delayed. (Def.'s Trial Mem. (ECF No. 47), at 7; *see also* Jt. Stip. Facts ¶ 7 ("Plaintiff submitted a claim to GuideOne for PIP benefits under the Policy.").) GuideOne does not explain why a delay in providing specific claim-related information should have the same effect as a delay in notifying the insurer of the existence of a claim. The court therefore declines to extend Oregon's delayed-notice doctrine to the circumstances of this case. Moreover, as explained in detail below, Scheel did not unreasonably delay providing claim-related information to GuideOne because he had no notice or reason to believe that GuideOne considered the Surgery unrelated to the Collision.

7. Scheel did not breach his contractual obligations under the Policy. GuideOne contends Scheel

breached the Policy by filing suit before he had complied fully with the Policy — specifically, by not establishing the relationship between the Surgery and the Collision. This contention fails because Scheel had no obligation under the Policy to provide GuideOne with information he did not know GuideOne needed. The record also provides no support for GuideOne's contention that Scheel knew of GuideOne's belief that the Surgery and Collision were unrelated.

First, there is no evidence in the record that Scheel understood GuideOne's non-payment of his Surgery-related expenses was based on GuideOne's contention that the Surgery and Collision were unrelated. GuideOne sent the erroneous "limits letter" shortly after the Surgery, and did not correct its error until after Scheel filed this lawsuit. (Jt. Stip. Facts ¶¶ 17–19.) Medical expenses are presumptively reasonable and necessary once submitted to the insurer as part of a PIP claim. *Ivanov v. Farmers Ins. Co. of Or.*, 344 Or. 421, 429 (2008) (construing OR. REV. STAT. § 742.524(1)(a)). Here, GuideOne did not inform Scheel or his billing medical providers prior to this litigation that it considered the Collision and Surgery unrelated. The only pre-litigation documentation of GuideOne's misunderstanding of the Surgery is in a GuideOne employee's internal file note, which Scheel did not receive until discovery in this lawsuit. (Alt Dep. Ex. 6.) Scheel could reasonably infer that GuideOne agreed that the Surgery was a reasonable and necessary expense to treat an injury caused by the Collision because GuideOne failed to deny the medical expenses as unrelated to the Collision or unnecessary to treat the injury. Scheel therefore had no reason to believe that GuideOne needed additional information.

Second, GuideOne does not identify any specific provision of the policy with which Scheel did not comply before he filed suit. Furthermore, Scheel's obligation to submit to physical examination by a physician and examination under oath, to submit proof of loss, and to otherwise

cooperate in the investigation of his claim was contingent on GuideOne requesting such cooperation. (*See* Policy at 24–25 (detailing an insured's duties after an accident or loss).) Although attending an independent medical examination or examination under oath is a condition precedent for coverage, GuideOne never requested that Scheel undergo either type of examination. *Cf. McBride v. State Farm Mut. Auto. Ins. Co.*, 282 Or. App. 675, 688 (2016) (participation in an independent medical examination was a condition precedent to coverage).

8. GuideOne breached its obligation to pay Scheel's reasonable and necessary medical, surgical, and hospital expenses under the PIP provisions of the Policy by failing to pay all of Scheel's Surgery-related expenses. This breach occurred when GuideOne did not pay the bills which Scheel's providers submitted under Scheel's PIP claim, without providing a required notice of denial. Contrary to GuideOne's assertions, the breach did not occur only when GuideOne received conclusive documentation of the relatedness between the Surgery and Collision. The plain language of the Policy and Oregon's PIP statute required GuideOne to pay Scheel's reasonable and necessary medical, hospital, and surgical expenses caused by a motor-vehicle accident. Unless and until GuideOne denied Scheel's claims as unrelated, unreasonable, or unnecessary, neither the Policy nor Oregon's PIP statutes required Scheel to provide conclusive documentation of causation.

GuideOne cites *McBride* to support its argument that coverage is triggered only after it receives proof that expenses are reasonable and necessary. *McBride* is inapposite. There, the insurer requested that the insured undergo an independent medical examination, which the insured did not attend. *McBride*, 282 Or. App. at 682. Attending the independent medical examination was a condition precedent to coverage. *Id.* at 688. Unlike the insurer in *McBride*, GuideOne did not request that Scheel submit to an independent medical examination or otherwise notify Scheel that

GuideOne required additional documentation of the relatedness of the Surgery and Collision. Thus, *McBride* did not hold that proof that an expense is reasonable and necessary is a prerequisite to coverage.

Moreover, GuideOne's position is inconsistent with Oregon law. The burden of investigating a claim before denial rests on the insurer. *Ivanov*, 344 Or. at 431 (an insurer's common-law obligation of good-faith performance of the contract of insurance includes the duty to conduct a reasonable investigation of a claim before denial). Once Scheel submitted his PIP claim, his expenses were presumptively reasonable and necessary. *Id.* at 429 (expenses submitted as part of a PIP claim are presumptively reasonable and necessary once filed). The burden of investigation and proof rested on GuideOne unless and until it notified Scheel that his claim for benefits was denied. Accordingly, GuideOne breached the Policy when it did not pay the bills which Scheel's providers submitted under his PIP claim.

II.  Damages.

9. Scheel is entitled to damages for breach of contract.

10. The measure of Scheel's damages is the amount GuideOne would have paid under the Policy had it performed its contractual obligations. Under Oregon law, the party injured by a breach of contract may recover damages "placing the aggrieved party in the position that he or she would have occupied had the contract been fully performed." *Zehr v. Haugen*, 318 Or. 647, 658 (1994). Had GuideOne fully performed under the contract, Scheel would have received payment of the Surgery-related medical, hospital, and surgical expenses which he incurred.

11. GuideOne is not entitled to a reduction in damages based on Scheel's subsequent resolution of his liability for the Surgery-related expenses for a lesser sum. Under Oregon law, the time for

measurement of damages is at the time of breach. *Benson v. Weaver*, 102 Or. App. 225, 227 (1990) (holding that, generally, "the time to measure damages is as of the time of breach"). GuideOne's contractual obligation was to pay the reasonable and necessary expenses which Scheel incurred. As discussed above in paragraph 4, the phrase "expenses incurred" refers to those expenses to which Scheel became personally liable at the time of treatment, not the amount paid to resolve such expenses. At the time of GuideOne's breach, its obligation was to pay $85,046.05. *See* Conclusions of Law ¶ 8, *supra*. Scheel's ultimate resolution of his liability for a lesser amount does not alter the amount GuideOne was obligated to pay at the time of GuideOne's breach of the Policy. The court therefore does not reach the question of whether the collateral-source rule applies in this case.

12. Scheel's damages are $76,266.27, the amount GuideOne was obligated to pay under the Policy less the benefits which GuideOne has paid.

III. Attorney fees.

13. The evidentiary record before the court is insufficient to determine whether Scheel is entitled to attorney fees under ORS § 742.061, and if so, the amount of such fees. Scheel may file a motion for attorney fees to determine his entitlement to attorney fees.

*Conclusion*

The court finds that GuideOne breached the contract of insurance, and awards Scheel $76,266.27 in damages.

DATED this 15th day of August, 2017.

s/ John V. Acosta  
JOHN V. ACOSTA  
United States Magistrate Judge