UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION


GERALD SCHEEL,                                    Case No.: 03:15-CV-01112-AC

                              Plaintiff,                    OPINION AND
                                                                 ORDER
        v.

GUIDEONE MUTUAL INSURANCE
COMPANY, an Iowa corporation,


                              Defendant.

_____

ACOSTA, Magistrate Judge:

*Introduction*

        Plaintiff Gerald Scheel ("Scheel") filed suit against Defendant GuideOne Mutual Insurance

Company ("GuideOne") for breach of an automobile insurance policy ("Policy"). Following a bench

trial, judgment was entered in Scheel's favor. Currently before the court is Scheel's Motion for

Attorney Fees ("Motion"). The parties disagree both on whether Scheel is entitled to attorney fees and on the reasonableness of the fees sought. Upon review and consideration, Scheel's Motion for Attorney Fees is granted in part, as he is entitled to recover some, but not all, of the attorney fees requested.[1]

*Background*

In 2002, Scheel purchased an automobile insurance policy from GuideOne. (Order and Op., ECF No. 28, at 2.) The Policy provided personal injury protection coverage for bodily injuries arising from automobile collisions. (Findings of Facts and Conclusions of Law ("Findings and Conclusions), ECF No. 57, at 3.) On July 25, 2013, Scheel was injured in an automobile collision ("Collision"). (*Id*. at 4.) After the Collision, Scheel's primary-care physician observed a disc herniation between the L2 and L3 vertebra, and referred him to a neurosurgeon. (*Id*. at 4.) Scheel underwent surgery in February, 2014. (*Id*.)

On May 14, 2015, Scheel filed this lawsuit for breach of contract in Marion County Circuit Court, and GuideOne timely removed to this court. (*Id*. at 6.) No tender of settlement was made in the six months after Scheel filed his complaint. (Pl.'s Memo. in Supp. of Mot. for Att'y Fees, ECF No. 59, Ex. 1 ("Motion"), at 2–3.)

Following a bench trial, on August 15, 2017, the court issued Findings of Fact and Conclusions of Law stating that GuideOne materially breached its obligation under the Policy. (Findings and Conclusions at 9.) The court found the Collision had caused Scheel's herniation and awarded damages of $76,266.27. (Findings and Conclusions at 7, 13.) However, the court

---

[1] The parties have consented to jurisdiction by a United States Magistrate Judge in accordance with 28 U.S.C. § 636(c)(i).

concluded that the evidentiary record was insufficient at the time to determine whether Scheel was entitled to attorney fees under ORS 742.061, and if so, the amount of such fees. (Findings and Conclusions at 13).

On August 28, 2015, Scheel timely filed the instant motion for attorney fees.

*Legal Standard*

Pursuant to Federal Rule of Civil Procedure 54, attorney fees must be requested by motion. FED. R. CIV. P. 54(d)(2)(A) (2018). In diversity cases, state law governs a party's entitlement to attorney fees. *Riordan v. State Farm Mut. Auto. Ins. Co.*, 589 F.3d 999, 1004 (9th Cir. 2009). In an insurance coverage dispute, Oregon law provides:

> [I]f settlement is not made within six months from the date proof of loss is filed with an insurer and an action is brought in any court of this state upon any policy of insurance of any kind or nature, and the plaintiff's recovery exceeds the amount of any tender made by the defendant in such action, a reasonable amount to be fixed by the court as attorney fees shall be taxed as part of the cost of the action and any appeal thereon.

OR. REV. STAT. § 742.061(1) (2018). Thus, ORS 742.061 sets forth four elements: (1) a plaintiff must have filed a proof of loss with its insurer; (2) settlement must not have occurred within six months of filing of that proof of loss; (3) the plaintiff must have brought a court action upon the policy; and (4) the plaintiff ultimately must have recovered more than the amount of any tender made by defendant in the action. *Precision Seed Cleaners v. County Mut. Ins. Co.*, 976 F. Supp. 2d 1228, 1236 (D. Or. 2013). If the statutory elements are met, the court "shall" award attorney fees. *Id.* (citing *Petersen v. Farmers Ins. Co. of Or.*, 162 Or. App. 462, 466 (1999)).

I.    Entitlement to Fees.

 GuideOne argues Scheel is not entitled to attorney fees because he failed to submit "proof of loss" under ORS 742.061 and because he did not comply with provisions of the Policy.  Scheel responds that proof of loss was made through the complaint because GuideOne was able to estimate and investigate Scheel's claim, and that the policy provisions are irrelevant in light of state law.

A.    Proof of Loss.

GuideOne specifically argues that without evidence that the Collision caused the herniation and necessitated the surgery, Scheel failed to submit a sufficient proof of loss.  Scheel responds that the complaint contains sufficient information for GuideOne to estimate its obligations.

Under ORS742.061, the "sufficiency of information" that constitutes a "proof of loss is evaluated in terms of the purpose of the requirement: to enable the insurer to estimate its rights and liabilities under the policy." *Zimmerman v. Allstate Property and Cas. Ins. Co.*, 354 Or. 271, 280 (2013).  "If a submission, by itself, is ambiguous or insufficient to allow the insurer to estimate its obligations, it nevertheless will be deemed sufficient if it provides enough information to allow the insurer 'to investigate and clarify uncertain claims.'" *Id.* at 281–282 (citing *Dockins v. State Farm Ins. Co.*, 329 Or. 20, 29 (1999)).  An insured's complaint may qualify as proof of loss when it "would permit an insurer to estimate its obligations." *Parks v. Farmers Ins. Co. of Or.*, 347 Or. 374, 382–84 (2009).  "Proof of loss does not require that the insured calculate the loss with sufficient specificity to enable the insurer to make a settlement offer." *Precision Seed Cleaners*, 976 F. Supp. 2d at 1238.  If, through a reasonable inquiry, the insurer can make the necessary calculation for a settlement offer, proof of loss is established.  *Id.*

In *Dockins v. State Farm Ins. Co.*, for example, the plaintiffs discovered oil seeping into their basement and notified their homeowner's insurance carrier, State Farm. *Dockins*, 329 Or. at 22. State Farm denied coverage, stating that, under the terms of the policy, it was not obligated to provide coverage for such seepage unless it contaminated groundwater. *Id.* Weeks later, the state department of environmental quality ("DEQ") initiated an administrative action against the plaintiffs for the leak, which had contaminated the groundwater. *Id.* at 22–23.

The plaintiffs sued State Farm for breach of contract. The parties subsequently settled and the plaintiffs moved for an award of attorney fees under ORS 742.061, arguing their complaint constituted proof of loss. *Id.* at 26. State Farm responded the complaint was insufficient because it failed to substantiate its allegation that there had been groundwater contamination and did not allege the remediation costs with adequate specificity. *Id.* at 30.

The Supreme Court of Oregon concluded that the complaint sufficed to constitute a proof of loss within the meaning of the statute, explaining that the allegations provided enough information to enable State Farm to determine its existing liability:

> In our view, those allegations in plaintiffs' complaint were sufficient to qualify as a proof of loss under ORS 742.061. State Farm acknowledges that its duty to defend would be triggered if there were a claim against plaintiffs based on groundwater contamination. The complaint alleges such a claim. Although it is true that the DEQ demand was not attached to the complaint and that State Farm was not required to accept plaintiffs' characterization of the DEQ demand at face value, it also is true that State Farm easily could have ascertained whether plaintiffs' characterization was accurate.

*Id.* The court rejected State Farm's contention that the complaint did not provide enough information on which to base a settlement offer, concluding it "ignore[d] [State Farm']s duty of inquiry." *Id.*

GuideOne asserts Scheel's complaint does not meet the minimum requirements that would permit an insurer to estimate its rights and liabilities under the Policy, because the complaint did not provide direct evidence that the surgery was related to the Collision. However, proof of loss does not require direct evidence of causation, but only sufficient information that permits an insurer to estimate its obligations. As in *Dockins*, in his complaint, Scheel alleged sufficient information to trigger GuideOne's duty of inquiry. The complaint alleges what the Policy covered, why the Policy applied to the Collision, that the Collision was related to the Surgery, and that GuideOne was obligated to pay for $89,456.33 in medical benefits. (Complaint, ECF No.1, at 3–6.) The complaint directly states, "As a result of this collision, Scheel sustained serious injuries requiring back surgery." (Complaint at 9.) Just as the plaintiff in *Dockins* was not required to attach the DEQ demand to the complaint, Scheel was not required to include evidence relating the surgery and Collision in his complaint. Here too, GuideOne did not have to accept Scheel's characterization at face value; rather, it was given sufficient information to investigate and clarify any uncertain claims under its duty of inquiry. Therefore, Scheel's complaint qualifies as proof of loss under ORS 742.061.

B.     Provisions of the Policy.

GuideOne next contends Scheel is barred from receiving attorney fees because he breached the Policy by filing suit before he had complied fully with its terms — specifically, by not establishing sufficiently the relationship between the surgery and the Collision until after filing this suit. GuideOne alleges Scheel did not adhere to the proof of loss provision of the policy.

GuideOne points to Part F of the Policy, which states:

A. No legal action may be brought against us until there has been full compliance with all the terms of this policy. In addition, under part A, no legal action may be brought against us until:

    1. We agree in writing that the "insured" has an obligation to pay; or

    2. The amount of that obligation has been finally determined by judgment after trial.

(Def.'s Resp. in Opp'n to Mot for Att'y Fees, ECF No. 65 ("Response"), at 3.)

GuideOne does not assert that Scheel violated subsections (1) or (2) of the above Policy provision. Rather, it implies that under Part F.A of the Policy, other "terms of the [P]olicy" required that Scheel submit independent proof of loss, including evidence of causation, to GuideOne before initiating this action. However, GuideOne cites and the court identifies no Policy provision imposing such a requirement. Part E.B.4 of the Policy requires that proof of loss be submitted "when required by [GuideOne]," (Policy, ECF No. 4–1, at 24, 53.) But GuideOne fails to show it ever required or requested that submission from Scheel. Moreover, the court already has rejected this argument. (*See* Findings and Conclusions at 10–11 ("GuideOne does not identify any specific provision of the policy with which Scheel did not comply before he filed suit. . . . Scheel's obligation to . . . submit a proof of loss . . . was contingent on GuideOne requesting such cooperation.").)

In sum, Scheel's complaint provides enough information to allow GuideOne to estimate its obligations and clarify uncertain claims and therefore qualifies as proof of loss under ORS 742.061. The Policy represents no bar to attorney fees. Therefore, Scheel is entitled to reasonable attorney fees.

II. Reasonableness of Fees Sought.

Scheel seeks to recover $56,225.25 in attorney fees, multiplied by 1.5, for a total requested

amount of $84,382.99.[2] These fees represent 239.63 total hours billed by Scheel's two attorneys, Christine R. Olson ("Olson") and James D. Vick ("Vick"), and a paralegal.

Under Oregon law, attorney fee awards generally are governed by ORS 20.075. "While courts need not make lengthy or complex findings under ORS 20.075, courts still 'must describe the relevant facts and legal criteria for the court's decision to award or deny attorney fees in any terms that are sufficiently clear to permit meaningful appellate review.'" *In re Marriage of Boyd*, 226 Or. App. 292, 303 (2009) (quoting *McCarthy v. Oregon Freeze Dry, Inc.*, 327 Or. 185, 190–91 (1998). The court satisfies this obligation by "including in its order a brief description or citation to the factor or factors on which it relies." *McCarthy*, 327 Or. at 188. "Those findings need not be complex or lengthy; they need not include criteria immaterial to the decision and not used by the trial court." *Kovac v. Crooked River Ranch Club and Maint. Ass'n*, 186 Or. App. 545, 553 (2003) (citing *McCarthy*, 327 Or. at 188; *Wright v. Jones*, 155 Or. App. 249, 252–53 (1998)). Though an "opposing party's objections to the attorney fee award 'play an important role' in framing the issues relevant to the court's decision . . . [even in the absence] of objections from the opposing party, the court has an independent duty to review a fee petition for reasonableness." *Kraft v. Arden*, No. CV. 07–487–PK, 2009 WL 602971, at *2 (D. Or. March 9, 2009) (quoting *McCarthy*, 327 Or. at 189).

ORS 20.075(1) contains the factors used to determine whether to award attorney fees, but that statutory determination is not made when, as here, an award of attorney fees is mandatory under another statute. *Petersen v. Farmers Ins. Co. of Oregon*, 162 Or. App. 462, 466 (1999); *see, e.g., Beck v. Metro. Prop. & Cas. Ins. Co.*, No. 3:13-CV-00879-AC, 2016 WL 4978411, at *11 (D. Or.

---

[2] Scheel's Motion initially sought $84,937.88 in legal fees, but in his reply brief he concedes that 4.9 of the hours billed are non-recoverable time spent on administrative and scheduling tasks and duplicative intra-office meetings. *See* Part II.B, *infra*.

Sept. 16, 2016) ("Because the court has determined under ORS § 742.061 that Beck is entitled to her attorney fees in this case, the court need not address the subsection (1) factors to determine whether she is entitled to attorney fees.").  In such a situation, the court need look to the factors set forth in ORS 20.075(2), which guide its determination of the amount of fees a prevailing party should receive.  ORS 20.075(2)  provides, in relevant part:

> A court shall consider the factors specified in subsection (1) of this section in determining the amount of an award of attorney fees in any case in which an award of attorney fees is authorized or required by statute. In addition, the court shall consider the following factors in determining the amount of an award of attorney fees in those cases:
>
>> (a) The time and labor required in the proceeding, the novelty and difficulty of the questions involved in the proceeding and the skill needed to properly perform the legal services.
>> (b) The likelihood, if apparent to the client, that the acceptance of the particular employment by the attorney would preclude the attorney from taking other cases.
>> (c) The fee customarily charged in the locality for similar legal services.
>> (d) The amount involved in the controversy and the results obtained.
>> (e) The time limitations imposed by the client or the circumstances of the case.
>> (f) The nature and length of the attorney's professional relationship with the client.
>> (g) The experience, reputation and ability of the attorney performing the services.
>> (h) Whether the fee of the attorney is fixed or contingent.

The subsection (1) factors are:

>> (a) The conduct of the parties in the transactions or occurrences that gave rise to the litigation, including any conduct of a party that was reckless, willful, malicious, in bad faith or illegal.
>> (b) The objective reasonableness of the claims and defenses asserted by the parties.
>> (c) The extent to which an award of an attorney fee in the case would deter others from asserting good faith claims or defenses in similar cases.
>> (d) The extent to which an award of an attorney fee in the case would deter others from asserting meritless claims and defenses.

(e) The objective reasonableness of the parties and the diligence of the parties and their attorneys during the proceedings.

(f) The objective reasonableness of the parties and the diligence of the parties in pursuing settlement of the dispute.

(g) The amount that the court has awarded as a prevailing party fee under ORS 20.190.

(h) Such other factors as the court may consider appropriate under the circumstances of the case.

OR. REV. STAT. § 20.075(1) (2018).

Thus, by its terms, the statute directs that in determining the amount of fees to award, the court considers the factors of both subsections (1) and (2). Reasonableness guides the inquiry, because "[n]othing in this section authorizes the award of an attorney fee in excess of a reasonable attorney fee." OR. REV. STAT. § 20.075(4).

The party seeking attorney fees "bears the burden of documenting the appropriate hours expended in the litigation and must submit evidence in support of those hours worked." *Gates v. Deukmejian*, 987 F.2d 1392, 1398 (9th Cir. 1992); *see also* United States District Court, District of Oregon, "Message from the Court Regarding Fee Petitions," available at https://ord.uscourts.gov/index.php/rules-orders-and-notices/notices/fee-petitions. Once that burden is met, the opponent must offer evidence "challenging the accuracy and reasonableness of the hours charged or the facts asserting by the prevailing party in its submitted affidavits." *Id*.

A.    ORS 20.075(1) Factors.

Scheel argues the fees sought are reasonable because GuideOne's "actions in this litigation caused unnecessary delay and additional work for both [Scheel] and the Court." (Motion at 4.) He notes that GuideOne's argument that Scheel's back injury was not related to the Collision first emerged only after the complaint was filed, and continued through the summary judgment stage,

"long after it became obvious the position was no longer tenable and [GuideOne] ultimately abandoned it during oral argument at the [] bench trial." (*Id.*) He contends that "frivolous" defense alone necessitated the bench trial that ensued. (*Id.*; Pl.'s Reply at 3–4.) On that basis, Scheel seeks a fee multiplier of 1.5, "to deter others from asserting such meritless defenses and also acknowledge [GuideOne's unreasonableness in its ongoing assertion regarding the relatedness issue . . . ." (Motion at 5.)

GuideOne objects to the multiplier, arguing that Scheel, too, caused delay by requesting multiple extensions, and citing *Precision Seed Cleaners*, 976 F. Supp. 2d at 1256, for its proposition that even "aggressive litigation tactics" in even a "hard fought" and "protracted" case do not warrant a multiplier, particularly when any "length of the case and [] time expended by [a p]laintiff's counsel on various issues raised by [a d]efendant is recoverable as time spent on a case." (Response at 5.)

Applying the ORS 20.075(1) factors here, the court concludes that neither party unnecessarily delayed the litigation, either through excessive requests for extensions or asserting meritless arguments. Both parties' counsel zealously advocated for their clients in an objectively reasonable manner. Both parties, though ultimately unsuccessfully, attempted to settle, an attempt the court commends. Thus, factors ORS 20.075(1)(a), (b), (e) and (f) are neutral here.

With respect to deterrence and the 1.5 multiplier, Scheel provides no specific legal authority or ground to support the multiplier's application here. As explained in Part I, Scheel is entitled to an award of attorney fees under ORS 742.061. He is not, however, necessarily entitled to a multiplier. GuideOne's pursuance of its causation argument following the summary judgment motion was not, as Scheel suggests, conduct that warrants deterrence. That the court ultimately rejected the argument does not mean it was frivolously brought or pursued. As this court's summary

judgment order explains, GuideOne produced at least some "evidence suggesting Scheel's back injury pre-existed the automobile accident and was not covered under the Policy as a result." (Opinion and Order, ECF No. 28, at 22.) Regardless of whether the relatedness issue, and GuideOne's derivative argument that Scheel was required to submit proof of that relatedness, were the principal questions at trial, a defendant is permitted to offer arguments in its defense. Like the claimant in *Precision Seed Cleaners*, Scheel, too, will be made whole for time expended due to issues raised by GuideOne through recovered "time spent." Thus, the multiplier is not justified based on the record of this case.

B.    ORS 20.075(2) Factors.

With respect to the ORS 20.075(2) factors, Scheel points to the "novel" nature of a primary question in this case — whether the Policy or GuideOne's Power of Attorney and Undertaking ("PAU") filing required coverage up to $25,000 or Can$150,000 — an issue of first impression in this District, and one that required "extensive research and briefing." (Motion at 5.) He also notes his acceptance of a bench trial, rather than a jury trial, which conserved time and resources of both the parties and the court. Olson and Vick contend their hourly rates are reasonable because they are commensurate with each attorney's respective experience and accolades and consistent with median billing rates of other, similarly experienced attorneys in their practice and geographic areas. Finally, Scheel claims the fees are reasonable given the relatively large sum in dispute — more than $75,000 in medical bills — and that he prevailed in recovering the entire amount of damages sought. GuideOne does not dispute those assertions or challenge the billing rates, but it objects to numerous, specific time entries on three different grounds, discussed *infra* in Parts II.B.1 and 2.

Applying the ORS 20.075(2) factors here, the court agrees that this case involved novel

issues that required more time and skill than a more routine case. However, as explained above, that extra time can be accounted for as time spent, through the hours billed and compensated. The additional time, as Scheel's counsel suggests, might have forced the attorneys to forego other clients and opportunities, though that opportunity cost would likely have been minimal. Additionally, the amount in controversy here, though significant, was not so substantial as to weigh heavily in favor of Scheel here. Similarly, Scheel's counsel's hourly billing, as opposed to fixed or contingent, fee structure bears neutrally on the court's ORS 20.075(2) analysis.

As to the hourly rates charged, this court utilizes the Oregon State Bar's Economic Survey ("Economic Survey") to determine reasonable rates. LOCAL RULE OF CIVIL PROCEDURE 54–3(a); *see* OREGON STATE BAR 2017 ECONOMIC SURVEY, REPORT OF FINDINGS (Dec. 2017) available at https://www.osbar.org/_docs/resources/Econsurveys/17EconomicSurvey.pdf. According to the Economic Survey, the hourly billing rates sought by Olson and Vick — $175; $250[3] and $350, respectively — are well within the reported range for Oregon attorneys with comparable levels of experience. (OREGON STATE BAR 2017 ECONOMIC SURVEY, at 38–40 (median hourly bill rate for attorney with 4–6 years experience in Oregon is $231; median rate for attorney with over 30 years experience is $332)). Additionally, the court finds the hourly rate charged by counsel's paralegal, $125, is reasonable. *See Topness v. Cascadia Behavioral Healthcare*, No. 3:16-CV-2026-AC, 2017 WL 8895626, at *4 (D. Or. Oct. 17, 2017), report and recommendation adopted as modified, No. 3:16-CV-02026-AC, 2018 WL 1015536 (D. Or. Feb. 22, 2018) (finding $135 was reasonable rate for paralegal in 2017); *Marquez*, 2012 WL 2469545, at *7 (approving paralegal hourly rate of $100).

---

[3] Olson's hourly rate increased from $175 to $250 during the course of the litigation to reflect her sixth year in practice. (Motion at 5 n. 1).

Therefore, in sum, the fees sought are reasonable and need be neither increased nor reduced under the ORS 20.075(1) or (2) factors.

However, GuideOne objects to specific time entries sought by Scheel's counsel on three grounds. First, it argues Scheel cannot recover for any fees incurred before November 14, 2015, the date six-months after proof of loss, the complaint, was served. Second, it argues that several time entries are "clerical" tasks that are considered overhead expenses already accounted for in the attorneys' billing rate. Third, GuideOne identifies several "intra-office conferences" for which both attorneys bill, which it argues is redundant and poor billing practice.

Scheel disputes the first and third grounds, but concedes in his reply that the administrative entries are non-recoverable and subtracts those entries from the total fee amount sought. The court addresses the two remaining arguments in turn below.

### 1. *Fees Incurred Within Six-Months of Proof of Loss Submission*.

GuideOne opposes any fees incurred before November 14, 2015, six-months after proof of loss was submitted, arguing that any such entries "were not related to obtaining coverage"; rather, they were "directed at negotiating with [Scheel]'s private health insurer, MODA, and in obtaining an underlying settlement for the bodily injury claim." (Response at 6.) It cites *Precision Seed Cleaners*, to suggest that fees accrue under ORS 742.061 only when "the fees reasonably relate[] to [the insured's] effort to obtain insurance coverage for the [loss]." (*Id*. (citing *Precision Seed Cleaners*, 976 F. Supp. 2d at 1249) (alterations in original)).

GuideOne correctly describes the proper inquiry for determining whether fees are recoverable under ORS 742.061, but it misapplies that analysis. Indeed, *Precision Seed Cleaners* instructs that the court's examination should focus on the purpose of each time entry and whether it was

reasonably related to obtaining insurance coverage for the loss. But nothing in the opinion imposes a temporal limitation or suggests that fees incurred in the six-month post-proof of loss period are not recoverable. In fact, the *Precision Seed Cleaners* language GuideOne cites came in response to the very argument GuideOne proffers here — "that given the six-month period of O.R.S. 742.061 in which Defendant had to make a reasonable settlement offer, it cannot be responsible for fees incurred before[] six months after it received [proof of loss]." *Precision Seed Cleaners*, 976 F. Supp. 2d at 1249. The court rejected that argument, instead noting that even "fees incurred before a lawsuit is filed against an insurer may be recovered [under O.R. S. 742.061] 'as long as they are reasonably related to the action itself.'" *Id.* (quoting *Farmers Ins. Co. of Or. v. Trutanich*, 123 Or. App. 6, 16 (1993) (alteration in original)). "[T]asks such as meeting with the client to discuss the claim process, reviewing opposing counsel's request for documents, reviewing the insurance policy, reviewing documents produced by client in support of insurance claim, preparing client for [examinations under oath], revising the proof of loss and schedules, drafting a demand letter, drafting the Complaint," were all found to be "reasonably related to obtaining compensation from Defendant for Plaintiff's loss and [therefore] compensable under O.R.S. 742.061." *Id.*

Applying the requisite analysis here, the court finds that all entries prior to the filing of the complaint were related to the action itself, and that the entries post-complaint but pre-November 14, 2015 were reasonably related to obtaining coverage from GuideOne for the loss. The time entries detail tasks including client conferences and calls, calls with the medical billing corporation, organizing and summarizing medical bills, drafting the complaint, researching cases cited by GuideOne, reviewing the PAU and Policy, and preparing production requests. (*See* Motion, Ex. A, "Description of Services," ECF No. 59–3, at 1–3.) Therefore, the fees requested that were

incurred before November 14, 2015 are compensable under ORS 742.061.

### 2. Intra-office Conferences.

Next, GuideOne objects to several intra-office conferences between Vick and Olson, arguing that because both attorneys billed for the meetings, the entries are redundant and unjustified.

"Generally, 'when attorneys hold a telephone or personal conference, good 'billing judgment' mandates that only one attorney should bill that conference to the client, not both attorneys." *Precision Seed Cleaners*, 976 F. Supp. 2d at 1252 (quoting *Nat'l Warranty Ins. Co. v. Greenfield*, No. 03:97–cv–01654–ST, 2001 WL 34045734, at *5 (D. Or. Feb. 8, 2001)) (alterations omitted); *see also Marquez v. Harper Sch. Dist. No. 66*, No. 2:09-CV-01254-SU, 2012 WL 2469545, at *9 (D. Or. June 26, 2012), rev'd in other part, 546 F. App'x 659 (9th Cir. 2013) (good billing practice requires that only one attorney bill for time spent in conference with multiple attorneys; excluding duplicative hours billed by attorney with lower hourly rate); *West Linn Corporate Park, LLC v. City of West Linn*, No. 03:01–cv–01787–HZ, 2011 WL 4708774, at *13–14 (D. Or. Oct. 4, 2011) (reducing requested fees due to duplicative meetings among counsel, indicating that such duplication is inconsistent with a higher hourly rate based on counsel's expertise).

The question of whether potentially duplicative time entries are justified rests with the trial court, which sits in the "best position to determine" whether specific entries were justified given its "superior understanding of the litigation." *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 949 (9th Cir. 2007) (internal quotation omitted) (affirming trial court's reduction of fees for meetings between the case's "primary counsel . . . and her colleague" because she had "substantial experience" and "assumed sole responsibility for several hundred [] matters]" in the area of law at issue and "failed to provide a persuasive justification for the intra-office meetings"). To properly compensate for

"clearly overlapping" meetings, a court may award the duplicative time to the attorney with the higher billing rate. *See, e.g., Precision Seed Cleaners,* 976 F. Supp. 2d at 1253; *Marquez*, 2012 WL 2469545, at *9 ("Where duplicative entries have been identified, I have excluded the duplicative hours billed by the timekeeper commanding the lower billing rate.") Other times, it may be appropriate to "allow some isolated conferences among counsel and staff [when the court] determine[s] they [a]re appropriate in [] specific instances," for example, meetings "regarding trial [and mediation] preparation," or "discussions about experts." *Precision Seed Cleaners,* 976 F. Supp. 2d at 1253.

GuideOne identifies numerous intra-office conferences between Vick and Olson to which it objects. (*See* Response at 9–12.) Some of those instances since have been obviated by Scheel's voluntary concession of time spent on administrative and clerical tasks. (*See* Pl.'s Reply at 5–6.) Additionally, Scheel voluntarily strikes the overlapping time from two of the identified intra-office conferences on July 19, 2017 and January 25, 2017. (Reply at 6.)

With respect to those instances that remain in contention, Scheel offers the following arguments. First, several of the intra-office conferences GuideOne identifies were billed by only one of the attorneys in attendance. (*See* entries from May 6, 2016; May 19, 2016; January 24, 2017; and January 31, 2017; Motion, Ex. A, at 2–6; Reply at 6–7.) The court has reviewed and confirms this representation. Because those entries avoid duplication, they are reasonably recoverable by the attorney with the higher bill rate: here, Vick. As *Precision Seed Cleaners* and *Marquez* make clear, intra-office conferences are compensable, but by only one attorney. With respect to the March 16, 2016 meeting, during which Olson and Vick met to prepare for oral argument before this court, the court disagrees with Scheel and finds that 0.3 of Olson's hours billed that day likely represent an

overlap with Vick's billed time. However, that meeting appears to be just the type contemplated in *Precision Seed Cleaners*, an isolated conference among counsel that the court determines is appropriate because coordination was warranted given that the two attorneys would be arguing jointly before the court. Therefore, the time is nevertheless recoverable here.

Second, regarding a disputed entry on July 19, 2017, which details Olson's time spent "confer[ring] with [Vick] on case issues[ and] conduct[ing an] OTLA search for [an] expert," (Motion, Ex. A, at 4), Scheel voluntarily strikes 0.1 of the 0.4 hours claimed, presumably, the portion of the entry representing meeting with Vick. The other 0.3 hour, she states, was spent on Olson's independent research, which did not involve Vick and therefore is not duplicative. The court finds this concession satisfactory and reasonable. The remaining 0.3 hours may be claimed by Olson.

Third, Scheel also voluntarily strikes 0.7 hour of Olson's double-billed time from January 25, 2017. The remaining 3.8 hours of that time entry were spent "researching and editing a Response brief," (Reply at 6), and, as the court agrees, therefore is non-duplicative and recoverable.

Scheel does not address an intra-office conference on March 28, 2016, for which Vick billed 1.1 hours and Olson billed 1 hour. (*See* Motion, Ex. A, at 10.) Both attorneys' time entries for that meeting, however, also included descriptions of independent work related to reviewing the court's summary judgment ruling. Thus, it is impossible to discern how much of the 2.1 cumulative hours billed represents overlapping, double-billed time and how much represents time the two attorneys spent independently reading the ruling. Absent detailed specification as to how much of that total time was spent on the intra-office conference and how much was spent on the independent work, Scheel fails to carry his burden of documenting the appropriate hours expended and submitting evidence in support of those hours. As such, the court must consider the entire billed period as

overlapping, and, applying the approach as described above, awards only Vick's 1.1 hour billed. Accordingly, the court reduces the amount recoverable by $175.

Additionally, the court identifies another intra-office conference between Vick and counsel's paralegal, on May 18, 2015, which appears to have been double billed. (Motion, Ex. A, at 2.) Again, the court strikes the overlapping time spent by the person with the lower billing rate, and accordingly, reduces the fees recoverable by $12.50.

Finally, GuideOne objects to a single entry from May 26, 2016, which documents Vick's time spent on "OTLA briefing on PIP trial problems as they relate to this case. Notes to file and additional research on Safe Harbor." (Motion, Ex. A, at 3.) GuideOne contends this time represents "briefing on [an] unrelated Oregon Trial Lawyers Association matter." (Response at 9.) Scheel's counsel replies that the entry refers to "researching OTLA briefing as it relates to this case, making notes to the file, and researching ORS 742.061's safe harbor clause." (Reply at 7.) The court accepts this representation and is persuaded that the entry documents time spent researching relevant legal materials. This time, too, is compensable.

*Conclusion*

For the reasons stated above, Scheel's Motion for Attorney Fees (ECF No. 59) is GRANTED. Scheel is entitled to attorney fees in the amount of $56,037.75.

IT IS SO ORDERED.

DATED this 27th day of June, 2018.


_____/s/ John V. Acosta_____
JOHN V. ACOSTA
United States Magistrate Judge